UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORA KNIGHT,

        Plaintiff,

vs.

Case No. 2:13-cv-13164

HON. GEORGE CARAM STEEH

CITY OF TAYLOR, and
JEFFREY P. LAMARAND,
Jointly and Severally,

        Defendants.
_____/

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DOC. 47]

    Plaintiff brings this case against her employer alleging interference and retaliation in violation of the Family Medical Leave Act ("FMLA"). Discovery is complete and the matter is before the court on defendants' motion for summary judgment. Oral argument was heard by the court on February 11, 2015. For the reasons stated herein, the defendants' motion for summary judgment is denied.

FACTUAL BACKGROUND

    Plaintiff Debora Knight began her employment with the defendant, the City of Taylor, in 1997 as a temporary clerk in the water department. Knight advanced through the ranks until being promoted by the defendant and then-mayor Jeffrey Lamarand (now deceased) to Interim Human Resources Director in January 2010. Several months later, Knight entered into an at-will Personal Services Contract (PSC) with the City to become full-time Director of Human Resources.

As Director of Human Resources, Knight's responsibilities included oversight of benefits, employee relations, union negotiations, risk management, consulting and being a resource for directors, unemployment, and employee transitions. According to Lamarand, department heads were told to report through Director of Executive Affairs Amanda Banas and include her in all communications. Knight claims that she reported only to Lamarand and disputes his assertion that she was told to report to Banas as well.

The City of Taylor experienced significant financial difficulties in 2011 and Lamarand determined that dozens of employees would need to be laid off as part of a deficit elimination plan. According to Lamarand, Knight was tasked in April or May of 2011 with effectuating both lay-offs and job eliminations and resulting transitions. The process of job eliminations (as opposed to lay-offs, in which employees are let go) allowed employees whose positions had been eliminated to "bump" other employees with lesser seniority. With 38 job eliminations and 38 lay-offs, Lamarand admitted that processing the resulting downstream bumpings could potentially take a month or more. Nevertheless, Lamarand expected Knight to complete all layoffs, job eliminations, and bumpings within the month of June. He claims Knight was instructed to have this process completed by July 1, 2011, but did not meet the deadline. For her part, Knight disputes that this deadline ever existed.

In May 2011, Knight had a conversation with Lamarand in which she referenced the "unraveling" of his political world. According to Lamarand, it was at this point that he concluded Knight was too concerned with politics and needed to be replaced. He also believed she was ineffective in negotiations with the unions and was not "on board" with

2

the administration's policies. Lamarand testified that he postponed the termination of Knight's PSC because he did not have an available replacement.

Knight stated that she was suffering vasculitis and for this reason requested intermittent FMLA leave commencing on June 21, 2011. Knight was deemed eligible and took intermittent leave from June 21 to July 12, 2011. However, her condition reportedly worsened and she took a continuous leave commencing on July 13, 2011. Lamarand acknowledges having been frustrated that "the job [wasn't] getting done", but testified that her leave had nothing to do with his decision to terminate her. On July 20, 2011, Lamarand sent Knight a letter in which he stated that "[t]o operate without an HR Director through August 15, 2011, will cause the City substantial and grievous injury to its operations. . . . The City is notifying you in advance, that as a key-employee, restoration to the Director of Human Resources may cause substantial and grievous harm, and therefore, restoration may not or will not occur." ("Key Employee Letter"). The City hired Ms. Gorski-Schulte as Interim Director of HR in July 2011.

After extensions by her doctor, Knight's FMLA leave ended on September 26, 2011. Knight returned to the workplace from her leave of absence on September 26, 2011, although her job duties had been assumed and taken over by Ms. Gorski-Schulte. Approximately 90 minutes after her return to the office, Knight was given notice that her employment as H.R. Director would be terminated in 30 days. Knight had fall-back rights and had the option of taking another position in the City, but chose to leave the City, defer her retirement, and seek outside employment. She received 30 days of vacation pay and eight weeks of severance pay as part of her separation, and did not submit anything to the City raising issues of retaliation or interference with her FMLA

leave. Nearly two years later, Knight filed this lawsuit alleging unlawful termination in violation of the FMLA amounting to unlawful interference and retaliation.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

I. Interference Claim

Under the FMLA, employees are entitled to full reinstatement upon their return from leave. *Arban v. West Publ. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). To prevail on an interference claim and survive summary judgment, the plaintiff must prove that 1) Knight was an eligible employee, 2) the defendant was an employer as defined by the FMLA, 3) Knight was entitled to leave under the FMLA, 4) Knight gave her employer notice of her intention to take leave, and 5) the employer denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006). The pertinent question here is whether Knight's restoration was merely illusory and her benefits were denied in violation of the FMLA. The defendants contend that Knight was properly reinstated under the FMLA.

The FMLA regulations provide that "'interfering with' the exercise of an employee's rights [includes]… manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220. Reinstatement for merely a short period (in this case, 90 minutes) qualifies as an illusory reinstatement and is therefore manipulatory. See *Stephens v. Neighborhood Service Organization*, 2008 WL 3913926, *4 (E.D. Mich. 2008); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007) (both finding that short-term reinstatement was illusory). However, even if Knight was not properly reinstated, "the right to reinstatement under the FMLA is not absolute. An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave." *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003). An employer is liable under an interference claim if an employee is not reinstated for reasons connected to her FMLA leave. *Arban*, 345 F.3d at 402.

Establishing the timing of the decision to terminate Knight's PSC is essential to an assessment of both the interference and retaliation claims. The defendants argue that the decision to terminate the plaintiff's PSC was made in May 2011, one or two months prior to her taking leave; therefore, she would have lost her job regardless of taking FMLA leave. There is no written documentation supporting the claim that the decision to terminate Knight was made at that time. Instead, the defendants rely exclusively on the testimony of Lamarand and Banas. Knight challenges the credibility of Banas based on conflicting testimony, including her statements in a previous case (*Tompos v. City of Taylor, et al.*, No. 13-13580 (E.D. Mich. 2013)) that she neither knew nor discussed with Lamarand the reasons for Knight's termination, while her present

6

testimony expresses extensive knowledge of the situation. Lamarand's testimony that they did not terminate Knight immediately due to his preoccupation with completing the layoffs and the lengthy process of finding and training a replacement is also subject to question. While Lamarand purportedly asked Banas to begin looking for a replacement in May, she did not initiate the search until after Knight had taken (intermittent) leave in late June 2011. A suitable replacement, Ms. Gorski-Schulte, submitted her resume in May and was hired as Interim HR Director in July. Furthermore, according to Banas, the time required to learn how to process layoffs and job eliminations was only a "day or two", and Gorski-Schulte began processing eliminations on her first day of work on July 25, 2011.

      The Sixth Circuit has found under similar circumstances, where an employer "who had been aware of problems with an employee did not decide to fire the employee until she took leave," may "lead a fact finder to infer that the employee would not have been fired absent her taking leave," especially when significant doubt has been cast upon the timing of and reasons for termination. *Arban*, 345 F.3d at 402 (quoting *Kohls v. Beverly Enters. Wisconsin, Inc.*, 259 F.3d 799, 806 (7th Cir. 2001)). In this case, serious doubt has been cast on the timing of the decision to terminate.

      Knight additionally disputes the defendants' proffered reasons for her termination. In response to the claim that she was terminated for failing to effectively negotiate with the union, Local 1128, and for her lack of loyalty to the Mayor, she produces the affidavit of the union's chief negotiator, Richard Johnson. According to Johnson, Knight properly performed her duties in negotiation meetings and exhibited due loyalty to the City administration. (Johnson Aff., ¶4). While Lamarand claims that

Knight was terminated because her preoccupation with politics stood in the way of fulfilling her duties, Lamarand also acknowledged that Knight had never voiced any resistance to carrying out his directives. (Lamarand dep. 81). Furthermore, the defendants' claim that Knight was falling short of her responsibilities is weakened by Lamarand's testimony that the layoff notices were completed on time and his acknowledgment that the processing of job eliminations may have required more than the one-month expected of Knight. (Lamarand dep. 69, 95). Finally, the plaintiff dismisses the allegation that she refused to report directly to Ms. Banas by disputing the existence of any such policy; here again, there is no written documentation or corroborating evidence to support the defendants' claim.

      The defendants rely heavily on *Smith v. Aco, Inc.* to justify the timing of Knight's termination in proximity to her FMLA leave. 368 F. Supp. 2d 721 (E.D. Mich. 2005). In *Smith*, Judge Cleland found that an employer who decided to terminate an employee prior to that employee taking FMLA leave was caught in a "catch 22," and the employer's "determination could not be executed without falling close in time to [the employee's] FMLA leave request." *Id.* at 735. However, there are significant differences between *Smith* and the present case. In *Smith*, the evidence clearly established that the decision to discharge was made four or five days before the plaintiff requested FMLA leave. The defendant's position in *Smith* was strengthened by the existence of extensive documentation supporting its stated timing of events, which is lacking in the present case. The fact finder in this case will be free to believe all, or part, or none of Lamarand's testimony.

Knight, meanwhile, presents significant evidence that she was terminated for reasons connected to her FMLA leave. The Key Employee Letter sent to her from Lamarand in July 2011 is the centerpiece of evidence establishing a causal link. The letter asserts that the absence of the HR Director (Knight) "will cause the City substantial and grievous injury to its operations and its HR functions in particular," indicating that Knight's leave would be a cause of her termination.

> Upon review, therefore, the City of Taylor has determined that as Director of Human Resources you are a 'key employee.' The City is notifying you in advance, that as a key-employee, restoration to the Director of Human Resources may cause substantial and grievous harm, and therefore, restoration may not or will not occur.

A "key employee" can be denied reinstatement rights at the conclusion of FMLA leave if denying reinstatement is "necessary to prevent substantial and grievous economic injury to the operations of the employer," and the employee is "among the highest paid 10% of all employees within 75 miles [of the employee's work site]." 29 C.F.R. § 825.216(b). As argued by the plaintiff and evidenced in the City payroll, Knight could not lawfully be designated as a key employee since she was not within the top 10% highest paid of all City employees within 75 miles of her work site. The defendants' claim that the letter was sent on advice from prior labor counsel again relies on the testimony of Lamarand and Banas with no corroborating evidence. The plaintiff argues that the defendants refused to disclose the contents of their communications with counsel on the basis of attorney-client privilege. This privilege is waived by the assertion of an "advice of counsel" defense, such that "litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case." *New Phoenix Sunrise v. CIR*, 408 Fed. Appx. 908, 919 (6th Cir. 2010) (quoting *In re Lott*, 424

9

F.3d 446, 454 (6th Cir. 2005)).  In any event, given that a jury could reasonably conclude it was produced on Lamarand's own directive rather than on consultations with counsel, the letter creates a genuine issue of material fact and may support the conclusion that Knight was unlawfully terminated for reasons related to her FMLA leave.

Interpreting this evidence and other reasonable inferences in a light most favorable to the plaintiff fails to establish that Knight would have been terminated regardless of her FMLA leave.  The motion for summary judgment is denied as to the interference claim.

II.  Retaliation Claim

Section 2615(a)(2) of the FMLA states that it "shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  The regulations further provide that an employer "is prohibited from discriminating against employees who have used FMLA leave.  For example … employers cannot use the taking of FMLA leave as a negative factor in employment actions."  29 C.F.R. § 825.220(c) .

The FMLA authorizes mixed motive claims in which an employer bases an employment decision on both permissible and impermissible factors.  *Hunter v. Valley View Local Schools*, 579 F.3d 680, 692 (6th Cir. 2009).  If the plaintiff has presented evidence to establish that the defendant discriminated against her because of her FMLA leave, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002).  Specifically, the plaintiff

10

must present direct evidence that the employer acted with discriminatory motive for this framework to apply; otherwise, the plaintiff may use circumstantial evidence to establish a prima facie case under the more rigorous *McDonnell Douglas* framework. *Demyanovich v. Cadon Plating & Coatings*, 747 F.3d 419, 432 (6th Cir. 2014).

      Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). The plaintiff presents as direct evidence the testimony of Lamarand and an independent witness, David Mackie, as well as emails exchanged among Lamarand, Knight, and Banas, which suggest that Lamarand was frustrated by Knight's leave of absence. Specifically, Knight points to Lamarand's statement that Knight's leave "forced us to react differently" and Mackie's testimony that "I remember [Lamarand and Banas] being present when it was basically said that they were frustrated with Knight being gone." (Lamarand dep. 75; Mackie dep. 52)). Direct evidence generally cannot be based on isolated and ambiguous comments. *Weigel*, 302 F.3d at 382. Nevertheless, even if these comments are not found to be direct evidence of discrimination, the Key Employee Letter constitutes sufficient evidence of retaliatory motive so as to shift the burden of proof to the defendants. Since the defendants have not proven by a preponderance of evidence that they would have made the same decision absent the impermissible motive, the motion for summary judgment as to the retaliation claim is denied.

      Even absent direct evidence, Knight is able to both establish a prima facie case and demonstrate pretext under the *McDonnell Douglas* framework. To establish a prima facie case, the plaintiff must show that (1) she availed herself of a protected right

11

under the FMLA, (2) she was adversely affected by an employment decision, and (3) there is a causal connection between the exercise of a protected right and the adverse employment action. If these requirements are met, the burden shifts to the defendant to rebut the inference of unlawful discrimination by offering a legitimate, non-discriminatory reason for the action. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretext for unlawful discrimination. *Edgar v. JAC Prods.*, 443 F.3d 508 (6th Cir. 2006).

A close temporal proximity between a protected activity and an adverse employment action may constitute evidence of a causal connection. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007). The plaintiff's termination several months after her request for FMLA leave and on the same day as her scheduled return to work, in addition to evidence of frustration over her leave by her employer, is sufficient to establish a prima facie case. Therefore, the burden shifts to the defendants to rebut the inference of unlawful discrimination.

As the defendants have met this burden by offering legitimate reasons for the termination, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are pretext for unlawful discrimination. Pretext can be established by demonstrating "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employer's decision], or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chemicals. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Knight has met this burden through her rebuttal of the defendants' proffered reasons for her termination, as documented in the analysis of the interference claim.

Even if her rebuttal were not comprehensive in scope, in order to survive summary judgment, the plaintiff need not show that all of the factors articulated by the defendants are false but rather, only that some of the factors are false and a mere pretext for discrimination. *Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006). Accordingly, Knight's retaliation claim survives summary judgment even under the *McDonnell Douglas* framework.

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment is denied.

Dated: March 23, 2015

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 23, 2015, by electronic and/or ordinary mail.

S/Marcia Beauchemin
Deputy Clerk

---